UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

J.W., et.al.                                        CIVIL NO. 12-1369 (DWF/JSM)

    Plaintiffs,

v.                                                   <u>REPORT AND RECOMMENDATION</u>

SAINT PAUL PUBLIC SCHOOLS
INDEPENDENT SCHOOL DISTRICT
NO. 625, et. al.,

    Defendants.

The above matter came on before the undersigned upon petitioner Margaret O'Sullivan Kane's Petition for Attorney's Fees and Costs [Docket No. 70]. This petition was decided upon the parties' written submissions. This matter was referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(A), (B) and Local Rule 72.1(c) [Docket No. 75].

**I.    BACKGROUND**

Petitioner Margaret O'Sullivan Kane represented plaintiffs[1] in a lawsuit against the St. Paul Public Schools, Independent School District No. 625, St. Paul Public Schools Board of Education and several individuals connected with the St. Paul Public Schools, alleging violations under the Minnesota Human Rights Act, state and federal constitutions and state tort law claims. <u>See</u> Amended Complaint [Docket No. 1-2]. Plaintiffs' initial Complaint was served on April 12, 2012, and an Amended Complaint was served and filed on May 16, 2012. Notice of Removal, ¶¶2, 3 [Docket No. 1].

---

[1]    The suit was brought on behalf of minor children, whose interests were represented by their parents or legal guardians.

Defendants removed the case to federal court on June 7, 2012. Id. Kane's representation ended on October 22, 2012. Petition for Fees and Costs Arbitration, p. 2 ("Fee Petition") [Docket No. 70]; Notice of Withdrawal and Substitution of Counsel [Docket No. 34]. On October 23, 2012, the law firms of Stephen L. Smith, PLLC, and Sellano L. Simmons, PLLC substituted as plaintiffs' counsel. Notice of Withdrawal; Notice of Appearance [Docket Nos. 34, 35].[2] Prior to substitution of counsel, Ropella, Saint Paul Public Schools Board of Education, Saint Paul Public Schools Independent School District No. 625 (collectively "School District defendants") had moved for partial judgment on the pleadings. [Docket No. 13]. Kane filed opposition pleadings to this motion [Docket Nos. 31, 32] and a hearing was heard on the motions by Judge Donovan Frank on October 26, 2012. [Docket Nos. 37, 37]. Smith and Simmons represented plaintiffs at the hearing. Id.

Four days after the hearing, plaintiffs stipulated to the dismissal with prejudice of their claims under the MHRA against the defendant school teacher, dismissal without prejudice of their state law punitive damages claim, and dismissal with prejudice of their §1983 punitive damages claim against ISD No. 625 and the St. Paul Public Schools Board of Education and official capacity claims against the school principal. [Docket No. 38]. The District Court entered judgment of dismissal based on the stipulation on

---

[2] Kane stated that "challenges arose in the attorney-client relationship necessitating substitute counsel to successfully represent Plaintiffs and their claims. Pl. Petition, p. 3. Minor plaintiff representative Vanessa Boyd stated that Kane terminated the representation because she was losing her business. Affidavit of Vanessa Boyd ("Boyd Aff."), ¶9 [Docket No. 77]. Minor plaintiff representative Latasha Tolbert stated that Kane told her that she was losing her practice and did not have the financial wherewithal to continue with the litigation. Affidavit of Latasha Tolbert ("Tolbert Aff."), ¶7 [Docket No. 78].

2

November 1, 2012. [Docket No. 39]. The remaining claims were settled on January 23, 2013, and the case was dismissed with prejudice based on the parties' stipulation on February 21, 2013. [Docket Nos. 51, 62, 64].

On November 2, 2012, Kane moved to establish an attorney lien in the amount of $56,590 on any judgment or settlement entered in plaintiffs' favor. Motion to Establish Attorney Lien, p. 2 [Docket No. 41]. Kane stated that she had attempted to resolve the issue of her uncompensated work with plaintiffs and their new counsel Smith, but could not resolve the matter. Id., p. 2. Plaintiffs did not file a written response to Kane's motion to establish a lien, although plaintiffs' counsel Sellano Simmons appeared at the motion hearing and stated that plaintiffs did not agree with the amount of the fees Kane was claiming were due. Order, p. 1 [Docket No. 45]. This Court granted Kane's motion and ordered that an attorney lien consistent with Minn. Stat. §481.13 be established in an amount not to exceed $56,590. Id., p. 2. This Court further ordered that to the extent there was a fee dispute, the parties were to submit the dispute to arbitration pursuant to the parties' fee agreement with Kane. Id., p. 2.

On March 1, 2013, Kane contacted District Judge Donovan Frank, indicating that the parties had applied for the appointment of an arbitration panel through Ramsey County but that the parties preferred to have the district court resolve the fee dispute. [Docket No. 65]. The parties agreed that the matter could be decided on written submissions. [Docket No. 66]. Kane was ordered to file and serve a petition for fees and costs. Order, March 25, 2013 [Docket No. 74]. Plaintiffs were allowed to file and serve a response to Kane's petition and Kane was permitted a reply. Id., p. 1. The parties complied with these directives.

## II. DISCUSSION

### A. Kane's Petition and Plaintiffs' Response

Kane submitted an affidavit in support of her fee request in which she stated that she was admitted to practice in 1991 and began practicing civil rights and education law in 1993. Affidavit in Support of Petition for Fees and Costs Arbitration ("Kane Aff. I"), ¶2 [Docket No. 71]. Kane's practice focuses on civil rights litigation with an emphasis on education law, particularly in connection with student rights under state and federal law. Id., ¶4. Kane's hourly billing rate is $300 per hour, which she began charging in 2009. Id., ¶6. Kane stated that she worked a total of 170.8 hours on plaintiffs' lawsuit. Id., p. 5.

Plaintiff representatives Vanessa Boyd and Catrice Ingram entered into a written fee agreement with Kane. Kane Aff. I, Exs. 1, 2. Plaintiff representative Latisha Tolbert did not sign a retainer agreement, although there appears to be no dispute that she considered her a client of Kane, as well. Fee Petition, ¶8; Plaintiffs' Response to Margaret O'Sullivan Kane's Petition for Fees and Costs ("Pl. Resp.") [Docket No. 76].

Kane noted that her license to practice law was suspended from April 1, 2012 to April 21, 2012, because she did not timely pay her license fee. Fee Petition, ¶10. Kane proposed that her hourly rate for time billed during her suspension could be reduced to $100 per hour, resulting in a $5,350 reduction. Id. This is the only reduction from Kane's lien amount that she has proposed.

In support of her petition, Kane submitted the Affidavit of Daniel J. Stewart ("Stewart Aff.") [Docket No. 72]. Stewart is a supervising attorney at the Disability Law Center where his practice focuses on cases involving special education law. Id., ¶5.

4

Stewart represents children with disabilities and their families "seeking redress available from state and federal laws relating to children with disabilities." Id. Based on Kane's resume, Stewart stated that he believed that Kane had considerable experience as a litigator, had obtained favorable results for her clients, and had made presentations on special education topics for continuing legal education seminars. Id., ¶8. Stewart opined that Kane's hourly rate of $250[3] was reasonable and below the rate of practitioners with similar experience.

Plaintiffs admitted that Kane was entitled to an award of fees and costs, but objected to the amount Kane proposed--$51,240. Pl. Resp., p. 2. Plaintiffs stated that a greater reduction was warranted, but did not state the amount of the reduction. According to plaintiffs, reductions should be made to reflect Kane's billing for non-compensable time spent in media interviews, a fruitless effort to "coordinate" suits with another law firm suing the St. Paul School District, time billed while Kane was not licensed to practice law, and time billed for answering discovery when in fact Tolbert wrote the discovery responses. Id., p. 3; Tolbert Aff., ¶3. In addition, plaintiffs contended that Kane's time should be reduced because the claims against the school principal and claims under the MHRA were dismissed. Id., p. 4. Plaintiffs also asserted that Kane's unprofessional conduct warranted a further reduction in fees. Id., pp. 4-5. This conduct allegedly included using profanity when minor children were present, becoming agitated and demeaning, coming late to Boyd's interview with CNN, and

---

[3] The Court assumes this was a mistake as Kane sought an award based on an hourly rate of $300, not $250. The Court did not find Stewart's affidavit helpful in deciding Kane's fee petition. Stewart appeared to have no personal familiarity with Kane and his opinion was based solely on reviewing her resume. Stewart Aff., ¶8. That fact, coupled with this error regarding Kane's hourly rate led the Court to disregard Stewart's affidavit.

demanding that Boyd and Tolbert "speak the King's English." Boyd Aff., ¶¶4-8; Tolbert Aff., ¶¶4-6. Tolbert indicated that she had contacted the Lawyer's Board of Professional Responsibility regarding Kane's conduct. Tolbert Aff., ¶8.

Kane responded with a lengthy explanation of why she was late to the CNN interview. Reply in Fees and Costs Arbitration ("Reply"), pp. 1-2 [Docket No. 80]. Kane defended the amount of time she spent answering discovery, noting that plaintiffs were required to respond to ninety-three interrogatories and seventy-eight requests for production. Id., p. 2. Kane also noted that Tolbert's complaint to the Lawyer's Board was dismissed without investigation. Id., p. 4; Declaration of Margaret O'Sullivan Kane ("Kane Aff. II"), ¶5 [Docket No. 81]. Kane also defended her conduct in connection with telling Boyd and Tolbert to "speak the King's English," noting that she was merely helping her clients with their oral presentation skills. Id., ¶7.

### B. Legal Standards

The Court has not awarded fees and costs to Kane. Instead, the parties have voluntarily submitted their fee dispute to this Court in lieu of arbitration. The traditional lodestar method of determining fees in a fee award does not necessarily apply to this situation, but the Court found it most helpful in resolving the parties' dispute and therefore conducted its analysis applying that method.

Under the lodestar method, the number of hours expended on the litigation is multiplied by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); see also Gumbhir v. Curators of the Univ. of Mo., 157 F.3d 1141, 1146 (8th Cir. 1998) (citations omitted); Transclean Corp. v. Bridgewood Serv., Inc., 134 F. Supp. 2d 1049, 1052 (D. Minn. 2001). In addition, when assessing hourly rates, the Court may draw on

its own experience and knowledge of prevailing market rates as well as the attorneys' descriptions of their experience. Warnock v. Archer, 397 F.3d 1024, 1027 (8th Cir. 2005).

"Under the lodestar method, the Court determines the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Young v. Diversified Consultants, Inc., 554 F. Supp. 2d 954, 956 (D. Minn. 2008) (J. Davis) (quoting Hensley, 461 U.S. at 433). A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated. Emery v. Hunt, 272 F.3d 1042, 1048 (8th Cir. 2001); McDonald v. Armentrout, 860 F.2d 1456, 1458-59 (8th Cir. 1988) ("Requested rates should be in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.") (quoting Blum v. Stenson, 465 U.S. 886, 895 n. 11 (1984)). The fee applicant bears the burden to produce evidence to support the rates charged and hours worked. Hensley, 461 U.S. at 433.

Once a lodestar amount is determined, the Court then considers the factors described in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974) to increase or decrease the lodestar amount, if appropriate. Gopher Oil Co., Inc. v. Union Oil Co. of Cal., 757 F. Supp. 998, 1009 (D. Minn. 1991 (citation omitted). These factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys;

> (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Id. at 1011 n. 16 (citing Johnson, 488 F.2d at 717-19). Even though the Johnson factors may be used to increase or decrease the lodestar amount, "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." Id. In short, "[a]ssessing the reasonableness of a fee requires [the Court] to consider the plaintiff's overall success; the necessity and usefulness of the plaintiff's activity in the particular matter for which fees are requested; and the efficiency with which the plaintiff's lawyer conducted that activity." Jenkins v. Missouri, 127 F.3d 709, 718 (8th Cir. 1997); see also Hensley, 461 U.S. at 433-34 (hours may be reduced by the court where documentation of the hours is inadequate, if the case was overstaffed, or if the "hours are excessive, redundant or otherwise unnecessary.").

### C. Analysis of Kane's Submission

#### 1. Reasonable Hourly Rate

This Court found Kane's hourly billing rate of $300 per hour to be reasonable and in keeping with the prevailing market rate for attorneys with similar levels of experience. Warnock, 397 F.3d at 1027 (8th Cir. 2005).

#### 2. Time Billed During Kane's Suspension

"A lawyer who fails to pay the required attorney license fee is placed on non-payment suspension status and the right to practice law is automatically suspended." http://www.mncourts.gov/?page=4507. Kane billed $8,025 during her suspension. Kane Aff. I, Ex. 3. Kane proposed reducing her hourly rate for those periods to $100—

the rate she claims would have been billed by an administrative support professional. Pl. Petition, p. 4. Plaintiffs objected that Kane failed to submit an affidavit to substantiate this hourly rate. Pl. Response, p. 3, fn. 1.

This Court is conversant with the hourly billable rates for paralegals in the Twin Cities and finds that the $100 per hour rate proposed by Kane is reasonable for a paralegal. But Kane is not a paralegal and there is no evidence that she disclosed to her clients that she was suspended from practice between April 1, 2012 and April 21, 2012. The Court does not believe it is appropriate to retroactively convert Kane's time to that of an administrative professional to reflect her suspension. Kane should not have been practicing during her suspension and the Court does not believe it appropriate to reward her for her unauthorized practice by permitting recovery for those hours, even at the rate of $100 per hour. Therefore, a reduction of $8,025—the full amount of the time Kane billed during her suspension—is warranted.

### 3. Reasonably Expended Hours

Next, the Court examined the number of hours Kane expended to determine if they are reasonable in light of the outcome, the necessity and usefulness of the services provided, and the efficiency with which she conducted that activity in light of her expertise. In performing this calculation the Court must exclude "excessive, redundant or otherwise unnecessary hours." Hensley, 461 U.S. at 434. Quantifying the appropriate level of "lawyering" is not an exact science. Minneapolis Star & Tribune Co. v. United States, 713 F. Supp. 1308, 1312 (D. Minn. 1989). The Court must make judgments about the time expended, and has done so, reducing or rejecting time it considered excessive.

### a. <u>Administrative Tasks</u>

The Court has considered the fact that Kane is a sole practitioner who appears to practice without the help of a paralegal.  It is not clear that Kane even has office staff to assist her.  As a result, from a review of her billing records, it appeared that the burden of some administrative tasks fell to her.  While the Court is sympathetic to the loss of billable time a solo practitioner with minimal support experiences, the Court does not believe it is appropriate for Kane to recover fees for purely administrative tasks.  Fees for services that are purely clerical or ministerial in nature, which could have been performed by a secretary, should not be awarded in a fee petition.  <u>Mogck v. Unum Life Ins. Co. of Amer.</u>, 289 F. Supp. 2d 1181, 1193 (S. D. Cal. 2003) ("'[W]hen a lawyer spends time on tasks that are easily delegable to non-professional assistance, legal service rates are not applicable.'") (<u>quoting</u> <u>New Mexico Citizens for Clean Air & Water v. Espanola Mercantile Co., Inc.</u>, 72 F.3d 830, 835 (10th Cir. 1996)).  Thus, the Court disallowed the following entries, which reflect time spent on non-legal, administrative tasks:

- 1/27/12: "Read Notes, all documentation and records from client, organize into files." The Court disallowed 50% of this entry, or $712.50.

- 6/5/12: "Corresp. /Crt S&C new filing w/fee" This entry was both vague and appeared to relate to filing documents. The Court disallowed this entire entry of $150.

- 6/25/12 "Organize all documents in client file." The Court disallowed this entire entry of $975.

- 6/28/12 "Corresp./Clts/Request to meet the week of the 16th of July." The Court disallowed this entire entry of $75.

- 8/23/12    "Organize discovery into binders."  The Court disallowed this entire entry of $450.

- 9/26/12    "Pull docket sheet, complaint and answer, and upcoming deadline for CNN."  The Court disallowed this entire entry of $375 because it relates to administrative tasks, could have been completed by CNN without Kane's assistance and because it is excessive.

- 9/26/12    "Read corresp/Opp/Notice of Depositions for plaintiffs; review calendar; and remit copies to clients."  The Court disallowed this entry of $150.

Thus, in total this Court disallowed $2887.50 for administrative tasks that should not have been billed to plaintiffs.

### b.    Vague entries

The Court disallowed a portion of the 8/6/12 entry, "Client conf./Expectations of all participants and status of representation; read pre-trial order; Chicago school for MD."  Kane provided no explanation of what "Chicago school for MD" concerns.  The Court disallowed $50 for this entry.

### c.    Excessive Billing

This Court relied on its own experience and judgment in reducing some of the fees as excessive.  See Hensley, 461 U.S. at 433-34 (hours may be reduced by the court where documentation of the hours is inadequate, if the case was overstaffed, or if the "hours are excessive, redundant or otherwise unnecessary."); Nelson v. Metropolitan Life Ins. Co., Civ. No. 07-2326 (ADM/JSM), 2010 WL 153040 at *10 (D. Minn. Jan. 11, 2010) (disallowing one-half of the attorney's fees sought in connection with legal research, noting that it was "simply too much time" under the circumstances).

In addition, the Court reduced some of the fees for tasks billed in quarter-hour increments, which in this Court's judgment resulted in overbilling for very brief tasks.

11

<u>See</u> <u>United States v. Petters</u>, Civ. No. 08-5348 (ADM/JSM), 2009 WL 4806993 at *2 (D. Minn. Dec. 4, 2009) (disallowing time billed in quarter hour increments because that practice results in overbilling). The entries reduced as excessive are as follows:

- 6/28/12   "Correspondence/Clt. Request for Meeting and discovery status," .5 – $150.

The Court reduced this entry by $75

- 8/14/12   "Outline Rule 26(f) disclosures," 2.5 hours – $750

- 8/16/12   "Meet with LT to complete rule 26(f) disclosures," 1 hour – $300

- 8/16/12   "Write, finish and send Rule 26(f) disclosures," 4 hours – $1,200

These three entries indicate that Kane spent 7.5 hours drafting her Rule 26(f) disclosures and billed $2,250, which this Court considered excessive. The Court reduced this amount by $1,000.

- 8/31/12   "Outline Memorandum in support of motion to compel," 4.0 hours – $1,200

- 9/1/12   "Write motion to compel" 2.5 hours – $750

- 9/3/12   "Write motion to compel" 8 hours – $2,400

- 9/4/12   "Finalize motion to compel, organize and scan attachments, and ECF file," 6 hours – $1,800.

- 9/11/12   "Read corresp/Opp to Crt/TO courtesy copy of response to motion to compel; read and annotate memorandum, 3.75 hours – $1,125.

- 9/12/12   "Read corresp/Opp to Crt/SPPS courtesy copies of response to motion to compel; read and annotate memorandum," 5 hours – $1,500

- 9/17/12   "Prepare for oral argument on motion to compel," 2.75 hours – $825.

- 9/17/12   "Attend and participate in oral arguments on motion to compel," 1.25 hours – $375

These entries relate to plaintiffs' motion to compel to compel discovery, heard by this Court on September 17, 2012. [Docket No. 30]. The Court finds that $11,925 dollars for a relatively uncomplicated motion to compel is excessive. The Court reduced this amount by $5,925 to reflect that the motion should have taken at most 20 hours billed at $300 per hour, or $6,000 in billable time.

The entries of 2/11/12; 2/16/12; 3/12/12; 3/13/12; 3/15/12; 3/16/12; 3/20/12; 3/28/12; 3/29/12; 5/2/12; 6/7/12; 6/14/12; 8/6/12; 8/14/12; 8/17/12; 8/31/12; 9/4/12; 9/10; 9/12/12; 10/3/12; 10/4/12; and 10/5/12 all represent tasks billed in .25 increments. Generally these entries relate to reading correspondence. In all, the entries represent $3,225 in time billed. There is nothing per se wrong with billing in quarter hour increments, but as this Court noted, the practice too often result in overbilling for very brief task that more likely than not took less than a quarter hour to complete. As a result, the Court has reduced these entries by $1,000.

Thus, the Court reduced Kane's Petition by $8000 for excessive billing.

### D. Reductions to Kane's Fees Based on Allegations of Misconduct

Plaintiffs did not challenge Kane's experience or reputation, but used the "ability of counsel" as a catchall to seek a reduction in fees based on Kane's alleged unprofessional conduct. The Court rejects that argument. The Lawyer's Board dismissed Tolbert's complaint without investigation. Although this Court did not see Tolbert's complaint to the Lawyers Board, based on Kane's description, it is safe to assume that it contained many of the same allegations she and Boyd brought against Kane in connection with the fee petition. Reply, p. 4. More importantly, this is not the venue to air these allegations. A lawyer's "ability" in the context of a fee dispute

necessarily relates to the lawyer's legal skill and acumen, not his or her bedside manner. Plaintiffs have not alleged that Kane's behavior affected their lawsuit or resulted in unwarranted billings. Nor did they allege that she was not skilled or experienced enough to handle their suit. In fact, both Tolbert and Boyd stated that it was Kane who terminated her representation, not them. Thus, whatever conduct occurred, it was apparently not so disruptive that plaintiffs were forced to find another lawyer.

### E. No Basis for Further Reductions

This Court rejected the balance of plaintiffs' arguments for further reductions of Kane's fees. The time Kane devoted to answering discovery, 6.75 hours was reasonable. The fact that plaintiffs supplied information to Kane to answer the discover does not take away from the time that Kane or any lawyer must spend taking a client's information and translating it into responsive answers with proper objections.

Additionally, plaintiffs raised no argument that they did not want Kane to attend the CNN interviews or that they expected her not to bill for her time for the interviews. The fact that Kane may have been late for one interview because she got lost is of no consequence. There is no allegation that Kane billed for time when she was not actually present.

Lastly, the Court will not reduce Kane's fees because some of the initially-pled claims were dismissed. Plaintiffs cited Gurman v. Metro Housing & Redevelopment Corp., 884 F. Supp.2d 895 (D. Minn. 2012) in support of their argument that Kane's fees should be reduced "at least" by half because some of the claims were dismissed. Pl. Response, p. 4. In Gurman, Judge Schiltz noted that plaintiffs' law firm brought three

separate "kitchen sink" complaints asserting "literally <u>hundreds</u> of claims against defendants, almost all of which were frivolous." <u>Id.</u> at 899. (emphasis in original). The last complaint was brought after Judge Schiltz warned the firm "clearly and emphatically" to refrain from bringing frivolous claims. <u>Id.</u>

Here, there has been no allegation that Kane failed to conduct a reasonable investigation before initiating the suit and the dismissed claims were never adjudicated as frivolous—they were dismissed following briefing, oral argument before Judge Frank, and then ultimately based on the parties' stipulation. The Court rejects as meritless plaintiffs' contention that "because these claims resulted in dismissal, Kane's fee must be reduced."

### F. **Conclusion**

This Court recommends that the deductions below in the amount of $18,962.50 be taken against Kane's fee petition of $56,590:

- Fees incurred during suspension -- $8025
- Fees associated with administrative tasks -- $2887.50
- Vague entry -- $50
- Excessive fees -- $8000

Therefore, this Court recommends that plaintiffs pay Kane $37,627.50 in fees and costs.

### III. **RECOMMENDATION**

For the reasons set forth above, it is recommended that:

(1) Petitioner Margaret O'Sullivan Kane's Petition for Attorney's Fees and Costs [Docket No. 70] be GRANTED in part and DENIED in part and that Kane is entitled to attorney's fees and costs in the amount of $37,627.50.

(2) To the extent necessary for Kane to collect these fees and costs, her attorney's lien should be considered perfected in the amount of $37,627.50.

Dated: August 23, 2013

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

## **NOTICE**

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **September 6, 2013**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this Rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.